**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ASATUR SARGAVAKIAN,

Petitioner,

v.

TODD LYONS, *et al.*,

Respondents.

Case No. 5:26-cv-04691-ACCV

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

## I. RULING

On August 18, 2026, Petitioner Asatur Sargavakian ("Petitioner") filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), challenging his detention as a violation of the Due Process Clause of the Fifth Amendment to the United States Constitution and the Administrative Procedure Act. (Dkt. 1 at 15-28.)[1] For the reasons stated herein, the Court grants in part and denies in part the Petition and orders Respondents to provide Petitioner Asatur Sargavakian (A#216916559) an individualized bond hearing before an immigration judge within seven days of this order.

///

///

[1] All citations to Petitioner's and Respondents' filings refer to the pagination numbers added to the header when docketed in the Case Management/Electronic Case File system.

## II. FACTUAL AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Russia. (Dkt. 1 at 2.) On July 4 or 7, 2021, Petitioner applied for admission with United States Customs and Border Protection at the San Ysidro Port of Entry. (Dkt. 13 at 6; Dkt. 1 at 38.) Petitioner was released as "DT" and deemed admitted to July 5, 2022. (Dkt. 1 at 38.) On September 5, 2002, Petitioner filed an Application for Asylum which remains pending. (Dkt. 13 at 6.) Removal proceedings were initiated on or around January 9, 2024. (Dkt. 1 at 36.)

Petitioner was arrested by local law enforcement on July 16, 2026, for felony receiving stolen property in violation of California Penal Code § 496(a). (Dkt. 13 at 2.) When Petitioner was released the following day, Immigration and Customs Enforcement ("ICE") took him into custody. (Dkt. 1 at 8-9.) Petitioner was detained without notice or hearing. (*Id.*) Petitioner does not have a final order of removal. (*Id.*) Petitioner contends he is detained at the Adelanto West ICE Processing Center. (*Id.* at 1, 7.)

On August 18, 2026, Petitioner the Petition. (Dkt. 1.) Petitioner brings three claims for relief. (*Id.* at 15-28.) Count One is Violation of the Fifth Amendment – Procedural Due Process. (*Id.* at 15-24.) Count Two is Violation of the Fifth Amendment (Substantive Due Process). (*Id.* at 24-25.) Count Three is Immediate Release Is the Appropriate Habeas Remedy. (*Id.* 25-28.) For relief, Petitioner requests, among other things, his immediate release and for Respondents to be enjoined from re-detaining him absent notice and a constitutionally adequate hearing before a neutral adjudicator. (*Id.* at 28.)

On August 26, 2026, Respondents filed Respondents' Answer to Petition for Writ of Habeas Corpus ("Answer"). (Dkt. 8.) Respondents argue Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to *Rodriguez Vazquez v. Bostock,* 183 F.4th 1160 (9th Cir. 2026) (finding "that aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)."). (*Id.* at 2.) Respondents also argue

Petitioner has not met his burden of exhausting all available administrative remedies. (*Id.*)

On August 28, 2026, Petitioner filed Petitioner's Reply in Support of Petition for Writ of Habeas Corpus ("Reply"). (Dkt. 9.) In the Reply, Petitioner reiterates his claims in the Petition.

On September 10, 2026, Petitioner filed Notice of Supplemental Evidence, pertaining to his July 17, 2026, arrest. (Dkts. 10; 11.) The Court issued a Text Only Entry on September 14, 2026, requesting information regarding the circumstances of Petitioner's arrest on July 17, 2026, because neither party provided the Court with any details. (Dkt. 12.) On September 14, 2026, Respondents filed Respondents' Supplement on Petitioner's July 17, 2026, Arrest. (Dkt. 13.) On September 15, 2026, Petitioner filed Petitioner's Supplemental Response to Court's September 15, 2026, Minute Order Regarding July 17, 2026, Arrest. (Dkt. 14.)

## III. ANALYSIS

### A. Habeas Jurisdiction

A writ of habeas corpus may be granted to any petitioner who demonstrates "he is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474, 124 S. Ct. 2686, 2692, 159 L. Ed. 2d 548 (2004). A petitioner bears the burden of proving by the preponderance of the evidence that he is entitled to habeas relief. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

///

///

**B. Petitioner's Due Process Claim**

Petitioner argues his continued detention since July 17, 2026, without notice and a pre-detention hearing, violates the Due Process Clause of the Fifth Amendment. (Dkt. 1 at 15-25.) Respondents oppose Petitioner's release and argue that Petitioner is entitled to a bond hearing pursuant to *Bostock*, which Petitioner is not. The Court finds Petitioner is entitled to a bond hearing for the reasons that follow.[2]

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id*. at 693. As the Supreme Court recently reaffirmed, the Fifth Amendment "entitles [noncitizens] to due process of law in the context of removal proceedings." *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands." *United States v. Rivera-Valdes*, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property." *Shinault v. Hawks*, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting *Shinault*, 782 F.3d at 1057). Under the *Mathews* test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation

---

[2] Because the Court finds Petitioner is entitled to relief based on this claim, the Court declines to consider Petitioner's other claims as relief on this claim gives Petitioner the most significant relief.

through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." *Id*. (citation modified) (quoting *Shinault*, 782 F.3d at 1057).

Additionally, while the U.S. Constitution generally requires some kind of hearing before the State deprives a person of liberty or property, there still may be situations in which a prompt post-deprivation hearing is appropriate. *See Guillermo M. R.*, 791 F. Supp. 3d 1021, 1035-36 (N.D. Cal. July 17, 2025). The Courts recognize that there may be situations where an urgent arrest is required and a prompt post-deprivation hearing is appropriate. *See Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11 (E.D. Cal. Aug. 28, 2025) (*citing Zinermon*, 494 U.S. at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R.*, 2025 WL 1983677, at *9 ("absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ").

First, Petitioner has a substantial private interest in remaining out of immigration custody. After Petitioner entered the United States in July 2021, his DT humanitarian parole status expired in July 2022, and removal proceedings were initiated in January 2024, Respondents "made a decision not to detain [him]" during the pendency of his removal. *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (Dkt. 1 at 33-38.). Hence, for approximately two years, Respondents, with "full knowledge of Petitioner's identity, immigration status [,] and location during the pendency of [his] immigration [removal] [] . . . continuously elected not to detain [him] while exercising authority over [his] legal proceedings." *Zhou v. Janecka*, No. EDCV 26-04167-DTB, 2026 WL 2365550, at *5 (C.D. Cal. Aug. 14, 2026); (Dkt. 1 at 33-38.) This decision to allow Petitioner to live freely in the community gave rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Additionally, while Respondents' decision not to detain Petitioner was

discretionary, *see* 8 U.S.C. § 1226(a), that decision nonetheless created a protected interest in remaining at liberty while the government processed his asylum application. *Zhou*, 2026 WL 2365550, at *4 (collecting cases finding a protectable interest where the government decided "not to detain [a petitioner] or otherwise impede [their] liberty while exercising authority over [them] for purposes of adjudicating [their] applications for immigration relief"); *see also Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."). Indeed, Respondents "deliberate[ly] acquiesce[d]" to Petitioner's continued freedom by, among other things, affirmatively deciding not to detain Petitioner while his removal proceedings were pending. *Abdeltawab v. Armant*, No. EDCV 26-01520-MWF-DTBx, 2026 WL 1045564, at *2 (C.D. Cal. Apr. 13, 2026); *see* Dkt. 1 at 1-2. Petitioner relied on this liberty interest to live freely and "form the [] enduring attachments of normal life." *Morrissey*, 408 U.S. at 482; See Dkt. 8 at 2.) The length of Petitioner's freedom pending the adjudication of his removal proceedings only strengthens his interest in his continued freedom from immigration detention. *See Doe*, 787 F. Supp. 3d at 1093 (finding the government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest) ;(Dkt 1 at 2-3.) While this factor weighs in favor of Petitioner, it does not weigh as strongly as it would for a noncitizen without any showing of material changed circumstance particularly where such circumstances as here, a recent arrest for felony receipt of stolen goods, may be relevant to the assessment of dangerousness or flight risk. *See Hernandez v. Mullin, et al.*, No. 2:26-cv-02034, 2026 WL 1998571, at *5 (W.D. Wash. July 10, 2026).

Second, the risk of erroneous deprivation is high without a pre-detention hearing. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. *Zadvydas*, 533 U.S. at 690;

*see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). As noted, the government permitted Petitioner to remain at liberty for nearly two years after removal proceedings were initiated. (Dkt. 1 at 33-38.) While this factor also weighs in favor of Petitioner, it does not weigh as strongly as it would for a noncitizen without any showing of material changed circumstances, particularly where such circumstances may be relevant to the assessment of dangerousness or flight risk.

Given the significant risk of an erroneous deprivation of Petitioner's liberty, a pre-detention hearing would afford Petitioner the opportunity to demonstrate he does not pose a danger to the community or flight risk. *See Pinchi*, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention"). Where, as here, a petitioner "has not received a hearing or other process prior to the revocation of [his] liberty, 'the risk of an erroneous deprivation of liberty is high.'" *Zhou*, 2026 WL 2365550, at *6 (citation modified) (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025); Dkt. 1 at 8-9). In contrast, without the procedural safeguard of a pre-detention hearing, Respondents could unlawfully re-detain Petitioner at any time, regardless of whether his detention serves any valid governmental interest. *See Fernandez v. Semaia*, No. EDCV 25-03412-SPG-MBKx, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) (noting post-deprivation relief could result in the petitioner's indefinite detention "without any process"). Hence, Petitioner demonstrates a high risk of erroneous deprivation of his liberty without a pre-deprivation hearing.

Third, Respondents' interest in detaining Petitioner and the burden of a pre-detention hearing are both minimal. The fact the government "may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the

detention in a manner that comports with due process." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Therefore, Respondents have minimal interest in detaining Petitioner without a pre-detention hearing. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [the petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

Finally, while Respondents would have expended resources in providing Petitioner with notice and a hearing before re-detaining him, "those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. Custody hearings in immigration court are "routine" and impose only a "minimal" cost. *Singh v. Bowen*, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025)). Indeed, Respondents' delay in arresting Petitioner nearly two years after removal proceedings were initiated confirms "a pre-deprivation hearing was entirely feasible and required." *Galeano-Ariza v. Warden*, No. EDCV 26-4081-HDV-BFMx, 2026 WL 2491404, at *4 (C.D. Cal. Aug. 24, 2026); (Dkt. 1 at 33-38.) Hence, the government's interest in detaining Petitioner without a pre-detention hearing is low.

On balance of the *Mathews* factors, the Court finds that a prompt post-deprivation hearing to be consistent with due process where such hearing considers the grounds for Petitioner's detention and Petitioner's flight risk and risk of dangerousness generally. Thus, Petitioner is entitled to habeas relief for his due process claim.

**C. Appropriate Relief**

A bond hearing—where the Government bears the burden to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community—is the appropriate relief. *See Kou v. Warden of the Adelanto Ice Processing Ctr.*, No. 5:26-CV-02923-AJR, 2026 WL 1722906, at *4 (C.D. Cal. June 11, 2026) (finding that petitioner's re-detention was triggered by an arrest, and the proper remedy for a due

process violation was a prompt bond hearing where the government bears burden to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community); *Guerrero Alfaro v. Warden Golden State Annex Det. Facility*, No. 1:26-CV-02983-JLT-EPG-HC, 2026 WL 1224249, at *4 (E.D. Cal. May 5, 2026), report and recommendation adopted *sub nom. Alfaro v. Warden Golden State Annex Det. Facility*, No. 1:26-CV-02983 JLT EPG (HC), 2026 WL 1272626 (E.D. Cal. May 8, 2026) (ordering bond hearing for petitioner who was detained after he was arrested for aggravated assault).

## IV.CONCLUSION

For the reasons stated, the Court GRANTS the Petition and ORDERS: Respondents to provide Petitioner Asatur Sargavakian (A#216916559) an individualized bond hearing before an immigration judge within seven days, where the Government bears the burden to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. Respondents must file a notice of compliance within seven days of the bond hearing.

DATED: October 11, 2026

HON. ANGELA C. C. VIRAMONTES
United States Magistrate Judge